Filed 9/30/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYLER JACOB PAGE,<br><br>    Defendant and Appellant. | D084545<br><br><br>(Super. Ct. No. SCD295299) |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Appellant.


Tyler Jacob Page appeals the judgment sentencing him to prison for 30 years to life after a jury found him guilty of two counts of oral copulation of a child 10 years old or younger.  Page claims the trial court erroneously

instructed the jury on the use of expert testimony about common behaviors of children who have been sexually abused, trial counsel provided ineffective assistance by failing to object to expert testimony about the percentage of cases in which sexual abusers of children are known to their victims, and the cumulative effect of these errors deprived him of a fair trial.  We reject these claims of error and affirm the judgment.

## I.

## BACKGROUND

A.    *Underlying Facts*

Page's Daughter claimed he repeatedly molested her when she was five years old.  On multiple occasions, he entered her bedroom at night, pulled down her pants, and inserted his penis into her vagina.  Page also inserted his tongue into Daughter's vagina on multiple occasions.  On one occasion, Page told Daughter to suck his penis, but she refused.  Daughter kept the molestation "a secret" and did not tell her mother about it right away because she "ha[d] feelings for [her] dad," feared her mother would "kick him out" of the house if she revealed the secret, and "wanted [her mother] to have beauty sleep."  Daughter eventually revealed the molestation to her mother, who reported it to law enforcement.

B.    *Criminal Charges*

The People charged Page with two counts of sexual intercourse with a child 10 years old or younger (Pen. Code, § 288.7, subd. (a)), two counts of oral copulation of a child 10 years old or younger (*id.*, subd. (b)), and four

2

counts of lewd acts on a child younger than 14 years (*id.*, § 288, subd. (b)(1)).[1] Page pled not guilty to all charges.

C.      *Trial and Sentence*

The case proceeded to a jury trial. Daughter and her mother testified about the molestation and reporting as summarized in part I.A., *ante*.

The People called Christina Shultz, a licensed clinical social worker and forensic interviewer, to testify on common misconceptions about child sexual abuse. Shultz stated most people believe children are not sexually abused by family members, friends, or other persons known to the children, but in fact such persons are the perpetrators in more than 90 percent of the cases. She also stated many people believe a child who is sexually abused would immediately report the abuse, but in most cases the child delays disclosure for months or years and may disclose events incrementally rather than all at once. Shultz said that reasons for delayed disclosure include ignorance the abuse was wrongful, fear of getting into trouble, and fear of breaking off the relationship with the abuser. Her testimony about delayed and incremental disclosure was based on the assumption the child's allegation of sexual abuse was true, but she conceded such behaviors could also be seen in the case of a false allegation. Shultz testified she did not know the parties involved in the case, participate in any of the forensic interviews of Daughter, talk to the interviewer, or review any police reports. Shultz discussed with the prosecutor only Daughter's age and relationship to Page and some of the topics of her (Shultz's) testimony.

---

[1]      The People also charged Page with two counts of animal cruelty (Pen. Code, § 597, subds. (a), (b)) to which he pled guilty. Those convictions are not at issue on appeal and will not be discussed further.

3

Page testified at trial. He denied he ever sexually abused Daughter. Page believed somebody might have molested her on a trip she had taken to Colombia with her mother several months before she accused him of molesting her.

The jury found Page guilty of the two charges of oral copulation of a child 10 years old or younger and not guilty of the other charges. The trial court sentenced him to prison for two consecutive terms of 15 years to life each. (Pen. Code, § 288.7, subd. (b).)

## II.

## DISCUSSION

Page raise three claims of error. First, he contends the trial court erroneously instructed the jury on how it could use Shultz's testimony. Second, Page contends his trial counsel was constitutionally ineffective for failing to object to Shultz's testimony about the percentage of child sexual abuse cases in which the child knows the abuser. Third, he contends the cumulative effect of those two errors deprived him of a fair trial. We consider each claim of error in turn.

A.   *Instructional Error*

Page complains the trial court erroneously instructed the jury with a modified version of CALCRIM No. 1193[2] as follows:

_____

[2]   The pattern instruction concerns testimony on the stress reactions and other behaviors commonly observed in children who have been sexually abused, which are collectively called Child Sexual Abuse Accommodation Syndrome (CSAAS). (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*); *People v. Bowker* (1988) 203 Cal.App.3d 385, 391 (*Bowker*).) CSAAS may include failure to report the abuse, delay in reporting, or recanting a report. (*McAlpin*, at p. 1300; *Bowker*, at p. 394.) Expert testimony on CSAAS may be introduced to disabuse jurors of common misconceptions about child sexual abuse and to explain the child's apparently self-impeaching behavior. (*McAlpin*, at p. 1301; *People v. Lapenias* (2021)

4

"You have heard testimony from Christina Shultz regarding a pattern of behavior that may be present in child sexual abuse cases. Testimony as to this pattern of behavior is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"Christina Shultz' testimony about child sexual abuse is not evidence that the defendant committed any of the crimes charged against him.

"You may consider this evidence only in deciding whether or not [Daughter's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

Page admits he did not object to the instruction and argues no objection was required to preserve the issue for appeal because the instruction incorrectly stated the law. If an objection was required, he contends trial counsel was ineffective for not making one. On the merits, Page argues the instruction incorrectly stated the law and impermissibly allowed the jury to use Shultz's testimony as evidence of guilt. Page claims the instruction violated his due process right to a fair trial (U.S. Const., 14th Amend., § 1) by creating an impermissible inference of guilt and lessening the People's burden of proof. He also argues the instructional error was prejudicial and requires reversal of the judgment because this was a close case that turned largely on Daughter's credibility and it is reasonably probable that without the error the jury would not have found him guilty.

Page may raise his claim of instructional error on appeal even though he did not object to the instruction at trial. "Generally, an instruction may not be challenged on appeal unless the party made an appropriate objection at trial. [Citation.] But a challenge may be raised where the claim, like

67 Cal.App.5th 162, 173 (*Lapenias*); *Bowker*, at pp. 393–394.) Such testimony is admissible where, as here, "the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744–1745.)

[Page's] here, alleges that the instruction was not correct in law or affected the defendant's substantial rights." (*People v. Sexton* (2019) 37 Cal.App.5th 457, 466 (*Sexton*); accord, *People v. Ortiz* (2023) 96 Cal.App.5th 768, 815, fn. 23 (*Ortiz*).) Our decision on this point makes it unnecessary to consider Page's alternative claim that trial counsel provided ineffective assistance by failing to object. (*Ortiz*, at p. 815, fn. 23.)

Turning to the merits, we review Page's claim of instructional error de novo. (*People v. Mataele* (2022) 13 Cal.5th 372, 419; *Ortiz, supra,* 96 Cal.App.5th at p. 815.) We consider the challenged instruction in the context of the instructions as a whole and the trial record to determine whether it is reasonably likely the jury applied the instruction in an impermissible manner. (*Mataele*, at p. 419; *Ortiz*, at pp. 815–816.) We presume the jurors understood and followed the court's instructions. (*People v. Frederickson* (2020) 8 Cal.5th 963, 1026; *Ortiz*, at p. 816.)

Page contends one defect in CALCRIM No. 1193 is that it allows the jury to use CSAAS testimony as evidence of guilt. Specifically, he complains the instruction does not tell the jury that such testimony "is not intended and should not be used to determine whether the victim's molestation claim is true" (*People v. Housley* (1992) 6 Cal.App.4th 947, 959 (*Housley*)) and permits the jury to consider the testimony "in evaluating the believability of the alleged victim" (CALCRIM No. 1193). He argues that "using CSAAS evidence to evaluate whether the victim's testimony is believable (which CALCRIM No. 1193 allows) and using it to evaluate whether the victim's claims are true (which *Housley* prohibits), is a distinction without a difference." Page asserts that allowing the jury to use CSAAS to conclude the victim did not lie "unavoidably allows the jury to consider CSAAS evidence to prove [the defendant's] guilt," because if the victim did not lie, she told the

6

truth, and if she told the truth, the defendant was necessarily guilty.  We find this argument unpersuasive.

The version of CALCRIM No. 1193 the trial court gave the jury, considered as a whole and in the context of Shultz's testimony as it must be (*People v. Reliford* (2003) 29 Cal.4th 1007, 1013; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503 (*Gonzales*)), would not have led jurors to believe they could consider the testimony as evidence of guilt.  The court told the jury that Shultz's "testimony about child sexual abuse *is not evidence that the defendant committed any of the crimes charged against him*."  (Italics added.)  Rather, her testimony was "offered *only* to explain certain behavior of an alleged victim of child sexual abuse," and could be considered "*only* in deciding whether or not [Daughter's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."  (Italics added.)  Shultz testified she knew Daughter's age and relationship to Page but had no other knowledge about the parties or the alleged molestation.  She acknowledged the delayed and incremental disclosure commonly seen in cases in which children have been sexually abused could also be seen in cases of false allegations of abuse.  Shultz expressed no opinion on whether Daughter was telling the truth or whether Page was guilty.  Although the trial court did not use the language from *Housley, supra*, 6 Cal.App.4th at p. 959, that Page prefers, the court correctly instructed the jury on how it could and could not use Shultz's testimony.  On this record, it is not reasonably likely the jury would have understood the instruction as allowing it to consider her testimony as proof that Page molested Daughter.  (See *Ortiz, supra*, 96 Cal.App.5th at pp. 815–816; *Housley,* at pp. 955–956.)

7

We are not the first appellate court to reject the argument that CALCRIM No. 1193 impermissibly permits jurors to consider CSAAS testimony as evidence of guilt. As Page acknowledges, several others have done so. In *Gonzales, supra*, 16 Cal.App.5th 494, the defendant "argue[d] it is impossible to use the CSAAS testimony to evaluate the believability of [the victim's] testimony without using it as proof that [the defendant] committed the charged crimes." (*Id.* at p. 503.) In rejecting the argument, the Court of Appeal explained: "A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the victim's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested." (*Gonzales*, at p. 504.) Other cases have followed *Gonzales*. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 219–220; *Ortiz, supra*, 96 Cal.App.5th at pp. 815–816; *Lapenias, supra*, 67 Cal.App.5th at pp. 175–176; *People v. Munch* (2020) 52 Cal.App.5th 464, 473–474.) We agree with these decisions and reject Page's contention they were wrongly decided.

The second defect in CALCRIM No. 1193 of which Page complains is that it allows jurors to consider whether or not the victim's conduct "was consistent with the conduct of someone who has been molested." Page asserts the quoted language "directly conflicts with decades of case law holding that CSAAS testimony must never be used as evidence that the

8

complaining witness's behavior *was consistent with* the behavior of an abused child"; rather, he says, it must be "strictly limited to providing evidence that the victim's behavior was *not necessarily inconsistent* with that of an abused child." Page contends CALCRIM No. 1193 permits a "type of 'predictive conclusion' inference" that is "strictly forbidden," namely, that "if the victim's behavior 'was consistent' with the behavior of a known abuse victim, the victim must have been abused." We disagree.

The appellate courts that initially approved use of CSAAS testimony held that it "is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are *not inconsistent with having been molested*" (*Bowker, supra*, 203 Cal.App.3d at p. 394, italics added) and that the jury must be instructed on this limitation (*Housley, supra*, 6 Cal.App.4th at p. 959). CALCRIM No. 1193 used the "not inconsistent with" phrasing until it was amended in 2022 in response to unpublished opinions that considered challenges to the instruction as "potentially misleading" because it used the quoted phrase and did not otherwise state the permissible use of CSAAS testimony. (Judicial Council of Cal., Advisory Com. on Criminal Jury Instructions Rep., Jury Instructions: Criminal Jury Instructions (Sept. 20, 2022) p. 4.) The double negative was removed and replaced with the "consistent with" phrasing that is in the current version, and the second paragraph stating that CSAAS evidence "is offered only to explain certain behavior of an alleged victim of child abuse" was added "to clarify the distinction between the proper and improper use of the evidence." (*Id.* at pp. 4, 86; see *Gonzales, supra*, 16 Cal.App.5th at p. 503 [quoting prior version of CALCRIM No. 1193].) In our view, the current version of the instruction does not misadvise the jury on the limited use of CSAAS testimony.

9

The concern identified in the early case law was that absent a proper limiting instruction a jury might use CSAAS evidence as a predictor of sexual abuse, i.e., the jury might leap from the premise that a child exhibits some of the signs of CSAAS to the conclusion that the child was sexually abused. (*Housley, supra*, 6 Cal.App.4th at pp. 957–959; *Bowker, supra*, 203 Cal.App.3d at pp. 393–394.) The current version of CALCRIM No. 1193 adequately addresses that concern by advising the jury that testimony on CSAAS: (1) "is *not* evidence that the defendant committed any of the crimes charged against him"; (2) "is offered *only* to explain certain behavior of an alleged victim of child sexual abuse"; and (3) may be considered "*only* in deciding whether or not [the alleged victim's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim." (Italics added.) An instruction that the jury may consider CSAAS evidence to decide whether or not the alleged victim's conduct was "consistent with" that of a child who has been sexually abused does not permit any use of the evidence not also permitted by an instruction that the jury may consider the evidence to decide whether or not such conduct was "not inconsistent with" that of a sexually abused child. The quoted phrases have the same meaning. (See Black's Law Dict. (6th ed. 1990) pp. 308 ["[c]onsistent" means "compatible" or "not contradictory"], 766 ["[i]nconsistent" means "[m]utually repugnant or contradictory"]; Merriam-Webster's Collegiate Dict. (11th ed. 2005) pp. 266 ["consistent" means "marked by agreement : COMPATIBLE — usu. used with *with* <statements not ~ with the truth>"], 631 ["inconsistent" means "not compatible with another fact or claim <~ statements>"].) Whichever phrase is used, "the last sentence of the instruction contains a direction with specific and general aspects. Specifically, the jury is to use the expert testimony to help ground its analysis

of the consistency of the complaining witness's conduct (by using a more informed reference point).  The jury is then to use this 'consistency' analysis in its general evaluation of the believability of the complaining witness's testimony. . . .  Reasonable jurors would not understand the instruction to mean that if they find the characteristics of [CSAAS] to be satisfied, this indicates that [the complaining witness] was necessarily telling the truth." (*Sexton, supra*, 37 Cal.App.5th at pp. 467–468 [considering similar language in instruction limiting use of expert testimony on intimate partner battering (CALCRIM No. 850)].)

We are not persuaded to reach a different conclusion by *People v. Clotfelter* (2021) 65 Cal.App.5th 30, on which Page relies.  That case involved a challenge to the admissibility of CSAAS evidence, not a challenge to the use of CALCRIM No. 1193.  (*Clotfelter*, at p. 62.)  The prosecutor presented expert testimony on CSAAS even though the alleged victims denied any sexual abuse by the defendant and there was no evidence of such abuse, delayed disclosure, incremental disclosure, or recanting.  (*Id.* at pp. 39, 42–43, 62–63.)  In closing argument, the prosecutor highlighted the CSAAS testimony and argued that because victims do not always show signs of abuse, the jury could infer the defendant had committed the charged crimes against the alleged victims.  (*Id.* at pp. 63, 64.)  Under those circumstances, the CSAAS testimony was not relevant and its admission was prejudicial.  (*Id.* at pp. 64–65.)

Page's trial involved no similar misuse of CSAAS evidence.  Daughter testified Page sexually abused her, she delayed reporting the abuse, and Shultz testified delayed disclosure is common in cases of child sexual abuse.  The prosecutor did not argue the delayed disclosure was evidence of abuse.  Rather, the prosecutor argued Daughter was credible in response to Page's

11

counsel's attack on Shultz's testimony and argument that Daughter was suggestible and her disclosure had been contaminated by her mother. In rebuttal argument, the prosecutor briefly alluded to Shultz's testimony and argued Daughter's delayed disclosure was "consistent" with the behavior of sexually abused children, who might not report the abuse right away because they "worry about getting in trouble" or "getting the person they love in trouble." That was a permissible use of the CSAAS testimony. (*McAlpin, supra*, 53 Cal.3d at pp. 1300–1301; *Bowker, supra*, 203 Cal.App.3d at pp. 393–394.)

For the reasons discussed above, we conclude the current version of CALCRIM No. 1193 (which uses the "consistent with" phrasing), like the prior version (which used the "not inconsistent with" phrasing), "accurately instructs the jury on the limited use of CSAAS evidence, but does not: (a) improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony; (b) violate due process; or (c) misapply the burden of proof." (*Lapenias, supra*, 67 Cal.App.5th at p. 175.) Having rejected Page's instructional error claim, we need not consider his related claim that the error was prejudicial and requires reversal of the judgment.

B.    *Ineffective Assistance of Counsel*

Page next complains his trial counsel was ineffective for failing to object to Shultz's testimony that a child is nine times more likely to be sexually abused by somebody the child knows than by a stranger. When asked about the misconception that it is usually a stranger who sexually abuses a child, Shultz stated: "I think the majority of people really believe that abuse is done by people, not the family, not friends, not people known and trusted to that child. But the reality is the majority of cases that we see, over 90 percent of the time, the child is very clear. The child knows the

12

person.  [¶]  And usually, they are somehow involved in that child's life, whether it be a family member, a friend.  So these are not strangers that are doing these things to children."  Given the jurors' knowledge "that the People's theory was that [Daughter] was abused by [Page] and that [he] testified [she] was abused by some unknown person," Page argues Shultz's testimony should have been excluded because "it effectively invited the jury to presume [his] guilt based on statistical probabilities."  He further argues the testimony was "incredibly prejudicial," and counsel's failure to object to it requires reversal of the judgment.  We disagree.

A defendant in a criminal case has a right to the effective assistance of counsel.  (U.S. Const., 6th & 14th Amends.; *Strickland v. Washington* (1984) 466 U.S. 668, 684–686; Cal. Const., art. I, § 15; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  To establish a violation of that right, the defendant must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  (*Strickland*, at p. 687; accord, *Ledesma*, at pp. 216, 217.)  As we shall explain, Page cannot establish deficient performance by trial counsel.

Shultz's testimony that in more than 90 percent of cases of child sexual abuse the child knows the abuser is not the type of statistical evidence that courts have held inadmissible.  The cases Page relies on held trial courts erroneously admitted expert testimony on the frequency of false allegations of child sexual abuse.  (*Lapenias, supra*, 67 Cal.App.5th at p. 177 [expert testified "it's rare for kids to make a false claim of sexual abuse" and "most claims of sexual abuse are true"]; *People v. Julian* (2019) 34 Cal.App.5th 878, 885 [expert testified false allegations ranged between 1 and 8 percent]; *People v. Wilson* (2019) 33 Cal.App.5th 559, 568 [expert testified false allegations ranged between 1 and 6 percent].)  The problem with such testimony was

13

that it invaded the exclusive province of the jury to assess witness credibility by " 'vouching for the veracity of the' alleged victims" (*Lapenias*, at pp. 179–180), "placing a thumb on the scale for guilt" (*Wilson*, at p. 571), and "invit[ing] the jury to presume [the defendant] was guilty based on statistical probabilities" (*Julian*, at p. 886).

There were no such problems with the testimony at issue in this case. Statistics on the frequency with which sexually abused children know their abusers do not "improperly bear on the specific complainant's veracity, as false allegation statistics necessarily do." (*People v. Sedano* (2023) 88 Cal.App.5th 474, 481 (*Sedano*).) "CSAAS statistics remain admissible if they merely educate the jury to counter 'a specific "myth" or "misconception" suggested by the evidence.' " (*Id.* at p. 482.) Shultz's testimony targeted the misconception that it is usually strangers who sexually abuse children. Expert testimony that "in most cases the child molester is not in fact a stranger to his victim" would "giv[e] the jurors information they needed to objectively evaluate the People's evidence" and is admissible. (*McAlpin, supra*, 53 Cal.3d at pp. 1303–1304.) We hold "there was no error in admitting [Shultz's] CSAAS statistical testimony about the prevalence of preexisting relationships between abuser and abused because the testimony targeted a common misconception regarding child sexual abuse. That CSAAS statistic thus served the permissible purpose of helping the jury evaluate [Daughter's] credibility, free of preconceived misconceptions, while not relieving jurors of their ultimate duty to independently determine the truthfulness of her testimony." (*Sedano*, at p. 483.)

Since Shultz's testimony on the percentage of child sexual abuse cases in which the child knows the abuser was admissible, Page's trial counsel did not perform deficiently by failing to object to the testimony. (*Sedano, supra*,

88 Cal.App.5th at p. 485; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 934.) The claim of ineffective assistance of counsel thus fails.

C.    *Cumulative Error*

Page's third and final claim of error is that the cumulative effect of the instructional error and the ineffective assistance of counsel of which he complains deprived him of his federal due process right to a fair trial.  Under the cumulative error doctrine, a series of trial errors that were individually harmless may be prejudicial if in the aggregate the errors deprived the defendant of a fair trial.  (*People v. Hill* (1998) 17 Cal.4th 800, 844; *People v. Sorden* (2021) 65 Cal.App.5th 582, 618; *People v. Poletti* (2015) 240 Cal.App.4th 1191, 1216–1217.)  Because we have concluded there was no instructional error and trial counsel was not ineffective, there are no errors the cumulative effect of which could be prejudicial.  (*People v. Abilez* (2007) 41 Cal.4th 472, 523; *Ortiz, supra*, 96 Cal.App.5th at p. 916; *Sorden*, at p. 618.)

III.

DISPOSITION

The judgment is affirmed.

IRION, J.

I CONCUR:

O'ROURKE, Acting P. J.

15

Kelety, J., concurring.

While I ultimately agree in the outcome, I write separately to clarify my view regarding the current version of CALCRIM No. 1193.

As the majority points out, CALCRIM No. 1193 was amended in 2022, in response to challenges to the double negative in the former instruction, i.e., "You may consider this evidence only in deciding whether or not [the victim's] conduct was *not inconsistent* with the conduct of someone who has been abused". (Judicial Council of Cal., Advisory Com. on Criminal Jury Instructions Rep., Jury Instructions: Criminal Jury Instructions (Sept. 20, 2022), p. 4, italics added.) The committee changed the phrase "not inconsistent with" to "consistent with," and added the following language: "Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse."

In my view, the change from "not consistent with" to "consistent with" discarded important nuance, increasing the potential for jurors to misunderstand the instruction.

From a mathematical perspective, a double negative can be readily converted to a positive word or phrase, but not so from a legal or logical perspective, at least not without losing important subtlety. Our California

Codes are replete with the use of "not inconsistent, presumably because the legislature wanted to convey something more than simply "consistent". (See, e.g., Health & Saf. Code, § 118910; Ins. Code, § 742.20; Wat. Code, § 11706; Welf. & Inst. Code, § 265.)

The Dictionary of Modern Legal Usage (2d ed. 1995) at page 207, provides an example of the slight but real difference between the terms:

> "When the U.S. Supreme Court reverses and remands a judgment of a federal court of appeals, it directs that the further proceedings be *consistent with* the Court's opinion. But when it reverses and remands a state-court judgment, it directs that the further proceedings be *not inconsistent with* the Court's opinion. [This is because] *consistent with* shows that the Court retains plenary power over the lower federal court. *Not inconsistent with*, by contrast, shows that the state court is much more independent to fashion its holdings on substantive law."

Here, too, although the difference between "consistent" and "not inconsistent" may be subtle, the prior term ("not inconsistent with") helped explain that victims sometimes report abuse in ways that do not match up with the expectations a lay person might have, and that such anomalies in reporting do not necessarily mean that the victim was not abused. (See (*People v. Bowker* (1988) 203 Cal.App.3d 385, 391−394.) The current "consistent with" phrasing does not have the same meaning and inadequately conveys the intent of the instruction. Stating that reporting anomalies "are

2

consistent with" abuse could be understood by a jury to mean that reporting anomalies indicate that the abuse *in fact occurred*.

That said, as in many cases addressing the instructions related to expert testimony surrounding child sexual abuse, the expert witness in this case clearly explained the confines of the research and the limitations of her opinions. Combined with the other instructions given to the jury, I would conclude that any error in the modified CALCRIM No. 1193 instruction was harmless and therefore agree that the judgment should be affirmed.


KELETY, J., Concurring


3